## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

XAVIER DANIELS,

        Plaintiff,

    v.

FIELD OPERATIONS MANAGER UPTON;
ROBERT TOOLE; and STANLEY
WILLIAMS,

        Defendants.

CIVIL ACTION NO.: 6:16-cv-94

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Georgia State Prison in Reidsville, Georgia, submitted a Complaint and Amended Complaint in the above captioned action pursuant to 42 U.S.C. § 1983. (Docs. 1, 4.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** all monetary damages claims against Defendants in their official capacities and all claims for punitive and compensatory damages. I further **RECOMMEND** that the Court **DISMISS** Plaintiff's Eight Amendment claims based on the conditions of his confinement and Defendant's alleged failure to protect. However, Plaintiff arguably sets forth plausible claims that Defendants violated his due process rights during his period of administrative confinement at Georgia State Prison. Consequently, his claims for injunctive relief and nominal damages on those claims will proceed, and the United States Marshal is **DIRECTED** to serve Defendants with a copy of Plaintiff's Complaint. Nonetheless, the Court should **DENY** Plaintiff's claim for preliminary injunctive relief.[1]

---

[1] The Court **DENIES AS MOOT** Plaintiff's First Motion for Leave to Proceed *in Forma Pauperis* (doc. 2). By Order of July 22, 2016, (doc. 5), the Court granted Plaintiff's Second Motion for Leave to

# BACKGROUND[2]

Plaintiff filed this action contesting certain conditions of his confinement. Specifically, Plaintiff contends that Defendants violated his rights to due process by placing him in the Tier II administrative segregation unit ("Tier II Unit") after inmates at Smith State Prison assaulted him on February 17, 2014. (Doc. 1, p. 2.) After the assault, Plaintiff was transferred to the infirmary unit at Georgia State Prison. Id. On March 13, 2014, prison officials moved Plaintiff to an Administrative Segregation Unit while the Inmate Affairs Unit and the Georgia Department of Corrections investigated his assault. Id. Plaintiff states that he is being held in the unit—despite not meeting the stated criteria for the program—as punishment for being assaulted. (Id. at p. 3.) He asserts that Defendant Stanley Williams, the former Warden of Smith State Prison and current Warden of Georgia State Prison, has prevented Plaintiff's security level from being dropped. Id. Plaintiff alleges that Defendant Williams told him that he will not be removed from the Tier II Unit until Plaintiff provides the name of the inmate who assaulted Plaintiff at Smith State Prison. (Id. at p. 4.) He also contends that Defendant Upton, the Field Operations Manager, and Robert Toole, the Warden of Georgia State Prison, participated in keeping Plaintiff in the Tier II Unit. (Id. at pp. 3–4, 7–9.)

---

Proceed *in Forma Pauperis*, (doc. 3), which Plaintiff submitted on the proper form. Consequently, the Court need not address Plaintiff's First Motion, (doc. 2), which Plaintiff did not submit on the proper form.

[2] The Court takes the following facts from Plaintiff's Complaint and accepts them as true, as it must at this stage. Plaintiff previously filed an action alleging many of the same facts contained in this Complaint. See Compl., Daniels v. Owens, et al., 6:15-cv-143 (S.D. Ga. Dec. 14, 2015) ECF No. 1 (hereinafter referred to as "Daniels I"). In Daniels I, Plaintiff complained about an assault against him at Smith State Prison on February 17, 2014. Id. He also raised claims regarding his placement in administrative segregation after being transferred to Georgia State Prison. At frivolity review, I determined that the claims pertaining to Plaintiff's placement in administrative segregation were unrelated to his claims regarding the assault. R. & R., Daniels v. Owens, et al., 6:15-cv-143 (S.D. Ga. May 20, 2016) ECF No. 12, p. 11 (adopted by Order, Daniels v. Owens, et al., 6:15-cv-143 (S.D. Ga. June 29, 2016) ECF No. 16). I directed Plaintiff that, should he seek to pursue those claims, he must do so through a separate action. Id. This lawsuit followed that Report and Recommendation.

Plaintiff claims that the conditions in the Tier II Unit differ greatly from the conditions in the general population of the prison. (Id. at pp. 4–6.) He states that inmates in the Tier II program have limits on privileges, the food they are served, and the items they can buy. Id. He alleges that in the Tier II program, low security prisoners are mixed with violent offenders and prisoners with mental illnesses. Id. Plaintiff also claims that other inmates' feces litter the Tier II area, and that Plaintiff is served food through a dirty tray flap. Id. In addition to sanitation issues, Plaintiff contends the Tier II Unit is plagued by poor ventilation, excessive noise, peeling paint in the showers, unsafe recreation, and limited mail access. Id.

In his Amended Complaint, Plaintiff supplements his claims to allege that he "has lost over thirty pounds due to psychological damage including personal humiliation and mental anguish." (Doc. 4, p. 1.) He goes on to allege that Defendants have placed Plaintiff in Phase Three of the Tier II Unit and denied him protective custody because Defendants assume that Plaintiff is withholding information about his assault. (Id. at 2–3.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is

frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and,

therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)).  However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

As an initial matter, this Court must give deference to prison officials on matters of prison administration and should not meddle in issues such as the contents of a prisoner's file. Courts traditionally are reluctant to interfere with prison administration and discipline, unless there is a clear abuse of discretion. See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989).  In such cases, "[d]eference to prison authorities is especially appropriate." Newman v. State of Ala., 683 F.2d 1312, 1320–21 (11th Cir. 1982) (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available); see also Thornburgh, 490 U.S. at   407–08 ("Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of

security, regulate the relations between prisoners and the outside world."); <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979) (acknowledging that courts have "accorded wide-ranging deference [to prison administrators] in adoption and execution of policies and practices that, in their judgment, are needed to preserve internal order and discipline and to maintain institutional security."); <u>Jones v. North Carolina Prisoners' Labor Union</u>, 433 U.S. 119, 129 (1977) ("Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry."); <u>Bradley v. Hart</u>, No. CV513-127, 2015 WL 1032926, at *10 (S.D. Ga. Mar. 9, 2015) ("It does not appear to be appropriate for this Court to order that prison officials remove entries from Plaintiff's file, which may or may not be accurate.").

Further, in order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." <u>Hale v. Tallapoosa Cty.</u>, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." <u>Id.</u> Plaintiff alleges that Defendants have violated his rights secured by the Eighth and Fourteenth Amendment by placing him and keeping him in the Tier II Unit.

## I. Claims for Monetary Damages Against Defendants in Their Official Capacities

Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. <u>Alden v. Maine</u>, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 67 (1989). Because a

lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief. The Court should **DISMISS** these claims.[3]

## II.     Dismissal of Compensatory and Punitive Damages Claims

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976-79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil

---

[3]  The Court also forewarns Plaintiff that Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of *respondeat superior*. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011). However, at this early stage, it does not appear Plaintiff has named Defendants based solely on their positions. Rather, he contends that they were directly involved in the violations of his rights and that the violations resulted from decisions made by Defendants. Nonetheless, to the extent that Plaintiff attempts to assert claims based solely on Defendants' supervisory positions, those claims will be dismissed.

actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532.

In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a *de minim[i]s* physical injury." Id. (internal citations omitted) (alterations in original). Consequently, a prisoner that has not suffered any physical injury cannot recover compensatory or punitive damages. Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s physical injury requirement."); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) ("Plaintiff seeks nominal, compensatory, and punitive damages. It is clear from our case law, however, that the latter two types of damages are precluded under the PLRA."), *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. 277 (2011).

In his Complaint, Plaintiff demands $365,000 in compensatory damages and $300,000 in punitive damages. However, the only arguably physical injury that Plaintiff alleges is weight loss. He claims that Defendants caused him to lose "over thirty pounds due to psychological damage including personal humiliation and mental anguish." (Doc. 4, p. 1.) However, Plaintiff's "alleged weight loss . . . reflects simply a somatic manifestation of emotional distress, rather than a distinct physical injury. . . . Numerous courts have held that a prisoner cannot satisfy § 1997e(e) by alleging only that he suffered from the physical manifestations (including

weight loss) of mental or emotional injuries." <u>Gribben v. McDonough</u>, No. 5:10CV320/MCR/CJK, 2012 WL 1463542, at *4 (N.D. Fla. Apr. 26, 2012) (citing <u>Davis v. District of Columbia</u>, 158 F.3d 1342, 1349 (D.C.Cir.1998); <u>Pearson v. Welborn</u>, 471 F.3d 732, 744 (7th Cir. 2006); <u>Van Wyhe v. Reisch</u>, 536 F.Supp.2d 1110, 1126 (D. S.D. 2008); <u>Plasencia v. California</u>, 29 F.Supp.2d 1145 (C.D. Cal. 1998); <u>Murray v. Edwards Cnty. Sheriff's Dep't</u>, 453 F.Supp.2d 1280, 1292 (D. Kan. 2006); <u>see also</u>, <u>Mathis v. Georgia State Prison</u>, No. 6:15-CV-122, 2016 WL 183753, at *4 (S.D. Ga. Jan. 14, 2016), *report and recommendation adopted*, No. 6:15-CV-122, 2016 WL 1562930 (S.D. Ga. Apr. 18, 2016) (dismissal of claims for compensatory and punitive damages where plaintiff alleged Defendants actions caused him high blood pressure and a "significant change in appearance."). Consequently, Plaintiff cannot recover punitive or compensatory damages in this action.

However, the Eleventh Circuit has held that courts should dismiss an inmate's punitive and compensatory damages claims under Section 1997e(e) without prejudice to allow an inmate to refile his claims when and if he is released. <u>Harris v. Garner</u>, 216 F. 3d 970, 980 (11th Cir. 2004). The Eleventh Circuit has also held that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." <u>Williams v. Brown</u>, 347 F. App'x at 436 (quoting <u>Hughes v. Lott</u>, 350 F.3d 1157, 1162 (11th Cir. 2003)). "Thus, a prayer for nominal damages is not precluded by § 1997e(e)." <u>Id.</u> (quoting <u>Smith v. Allen</u>, 502 F.3d at 1271).

In this case, Plaintiff has not alleged that he suffered any physical injury due to Defendants' purported constitutional violations. Accordingly, the Court should **DISMISS WITHOUT PREJUDICE** Plaintiff's claims for compensatory and punitive damages pursuant

to 42 U.S.C. § 1997e(e).  However, Section 1997e(e) does not bar Plaintiff's claims for nominal damages or injunctive relief, and those claims will proceed.

## III.    Eighth Amendment Claims

### A.    Conditions of Confinement

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted).  Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The Constitution does not mandate comfortable prisons. Id.  Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." Id. at 347.    However, "[c]ontemporary standards of decency must be brought to bear in determining whether a punishment is cruel and unusual." Bass v. Perrin, 170 F.3d 1312, 1316 (11th Cir. 1999).

The conditions imposed in "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." Sheley v. Dugger, 833 F.2d 1420, 1428–29 (11th Cir. 1987); see also Gholston v. Humphrey, No. 5:12-CV-97-MTT-MSH, 2014 WL 4976248, at *3 (M.D. Ga. Oct. 3, 2014) (dismissing prisoner's claims that his transfer to SMU with more restrictive conditions without a "legitimate penological justification" amounts to an Eighth Amendment violation); Anthony v. Brown, No. CV 113-058, 2013 WL 3778360, at *2 (S.D. Ga. July 17, 2013) (dismissing on frivolity review Eighth Amendment claims based on

conditions of confinement in crisis stabilization unit). Moreover, Plaintiff's allegations of unsanitary conditions in the Tier II Unit do not rise to the level of depriving him of the minimal civilized measures of life's necessities, even when judged by contemporary standards of decency. For example, while Plaintiff states that other inmates throw feces in the unit, he does not state that the prison staff never cleans the cell. He only claims that they allow the feces to remain for "hours" and that cell sanitation is not "consistent." Plaintiff's allegations do not indicate the sort of "extreme" deprivation that a valid conditions of confinement claim demands. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (conditions of confinement claims must demonstrate "extreme" deprivations); see also, McKissick v. Owens, No. CV 312-065, 2013 WL 1213087, at *4 (S.D. Ga. Feb. 21, 2013), *report and recommendation adopted*, No. CV 312-065, 2013 WL 1213076 (S.D. Ga. Mar. 25, 2013) ("limited periods of incarceration in unsanitary conditions are generally insufficient to evidence an Eighth Amendment violation."). Consequently, the Court should **DISMISS** Plaintiff's Eighth Amendment claims based on the conditions of his confinement.

### B.     Failure to Protect

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. "'To show a violation of [his] Eighth Amendment rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (quoting Purcell ex rel. Estate of Morgan v. Toombs Cty., 400 F.3d 1313, 1319 (11th Cir. 2005)). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell, 400 F.3d at 1319–20).

Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith, 368 F. App'x at 14. In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010).

Like any deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective inquiry. Chandler v. Crosby, 379 F.3d 1278, 1289–90 (11th Cir. 2004). Under the objective component, a plaintiff must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Miller v. King, 384 F.3d 1248, 1260–61 (11th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). To prove deliberate indifference, the prisoner must show that prison officials "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition at issue. Id. (quoting Chandler, 379 F.3d at 1289–90).

Prison officials are not held liable for every attack by one inmate upon another, Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986), nor are they guarantors of a prisoner's safety. Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990). Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather

than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

Throughout his Complaint, Plaintiff complains that Defendants have refused to place him in protective custody at Georgia State Prison. However, he fails to allege that he faces a known risk of injury at the prison. Rather, Plaintiff only references his assault at Smith State Prison in February of 2014. Thus, Plaintiff has failed to allege that Defendants are being deliberately indifferent to a known threat to Plaintiff's safety. Consequently, the Court should **DISMISS** his failure to protect claims arising at Georgia State Prison.[4]

## IV.    Fourteenth Amendment Due Process Claims

### A.    Procedural Due Process

An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Shaarbay v. Palm Beach Cty. Jail, 350 F. App'x 359, 361 (11th Cir. 2009) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, (1974). Rather, "a disciplinary proceeding, whose outcome will 'impose[ ] atypical and significant hardship on the inmate' must ensure the following due process rights: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his

---

[4]  Of course, this recommendation does not pertain to Plaintiff's failure to protect claims arising out of his assault at Smith State Prison. Those claims are proceeding in Daniels I and are not the subject of this suit.

defense." Asad v. Crosby, 158 F. App'x 166, 173 (11th Cir. 2005) (citing Wolff, 418 U.S. at 563–67).

This Court has held that an inmate's placement in administrative segregation is ordinarily a non-punitive action. Bradley v. Hart, No. CV513-127, 2015 WL 1032926, at *5 (S.D. Ga. Mar. 9, 2015), *appeal dismissed* (July 8, 2015). However, Plaintiff alleges facts that could plausibly establish that his placement in the Tier II unit was punitive in nature. Additionally, Plaintiff arguably demonstrates that his placement in the Tier II Unit resulted in an atypical or significant hardship. Further, Plaintiff's claims could establish that he was denied sufficient process. For example, he alleges that Defendants placed him in administrative confinement and kept him there for reasons inconsistent with the Department of Corrections' policies regarding the Tier II Unit. He states that Defendants kept him in the unit for years without reason, that they "just make up their own rules" regarding his placement in the unit, and they have told him that he will never be released from the unit unless he provides information regarding his assailant. Likewise, he argues that officers are allowed to make negative notations on a "behavioral monitoring sheet" outside of his cell, "which gets processed and decided by the defendants without letting the plaintiff and other offender's an [sic] chance to explain or defend themselves of the accusations against them period." (Doc. 1, p. 6.) For all of these reasons, Plaintiff arguably states a cognizable claim for denial of procedural due process against Defendants.

**B.      Substantive Due Process**

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. AMEND. XIV). The Supreme Court has identified two situations in which

a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 1290–91 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In Sandin, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. Id. at 475. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. at 485. The Supreme Court held there is no right inherent in the Due Process Clause for an inmate not to be placed in disciplinary segregation, nor is there a state-created liberty interest to be free from disciplinary segregation. Id. at 487. The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487. The Court observed that this holding was a return to the due process principles of Wolff and Meachum v. Fano, 427 U.S. 215 (1976), which required an inmate to suffer a

"grievous loss" before a liberty interest could be found. Id. at 478–83. The Sandin Court ruled

that in the future, liberty interests "will be generally limited to freedom from restraint which,

while not exceeding the sentence in such an unexpected manner as to give rise to protection by

the Due Process Clause of its own force, (citations omitted), nonetheless imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 480,

484; see also Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two

months' confinement to administrative segregation was not a deprivation of a constitutionally

protected liberty interest).

An inmate, therefore, has a liberty interest related to his confinement in segregation only

if the state has created a liberty interest through the nature of the conditions. Sandin, 515 U.S. at

487. To determine whether the state has created a liberty interest, courts must look to the nature

of the conditions of the confinement in relation to the ordinary incidents of prison life, rather

than to the language of the regulations regarding those conditions. Id. at 484; Wallace v.

Hamrick, 229 F. App'x 827, 830 (11th Cir. 2007). Courts should also consider the duration of

the confinement in segregation when determining if the confinement constitutes an atypical and

significant hardship. See Al–Amin v. Donald, 165 F. App'x 733, 738 (11th Cir. 2006); see also

Williams v. Fountain, 77 F.3d 372, 374 (11th Cir. 1996).

In the present action, Plaintiff plausibly alleges that his placement in the Tier II Unit

deprives him of a liberty interest. Plaintiff arguably sets forth facts which could lead to the

conclusion that the conditions of the Tier II Unit impose an atypical and significant hardship on

him relative to the ordinary incidents of prison life. Unlike the inmate in Sandin, Plaintiff

contends that the conditions in the Tier II Unit are markedly different from the conditions in

general population. Moreover, Plaintiff states that he has been placed in the Tier II Unit for

years.  For all of these reasons, Plaintiff has alleged sufficient facts for his substantive due process claims to proceed against Defendants.

## V.     Motion for a Preliminary Injunction

Plaintiff seeks preliminary injunctive relief from the Court.  (Doc. 1, p. 9.)  To be entitled to a preliminary injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest.  Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005). In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." Horton v. City of Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001).

Plaintiff fails to make a sufficient showing entitling him to the extraordinary remedy of a preliminary injunction.  Specifically, he fails to show that he has a substantial likelihood of ultimate success on the merits of his claims.  Accordingly, the Court should **DENY** his request for a preliminary injunction.  This is not to say that Plaintiff will not be able to ultimately obtain injunctive relief in this case.  However, he is not entitled to such relief at this time.

## CONCLUSION

For the numerous reasons set forth above, I **RECOMMEND** that the Court **DISMISS** all monetary damages claims against Defendants in their official capacities, all claims for punitive and compensatory damages, and all Eighth Amendment claims.  Additionally, the Court should **DENY** Plaintiff's claim for preliminary injunctive relief.

The Court **ORDERS** that any party seeking to object to this Report and Recommendation file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND DEFENDANTS

Plaintiff's allegations in his Complaint arguably state colorable claims for relief against Defendants under 42 U.S.C. § 1983. Specifically, Plaintiff sets forth plausible claims that Defendants violated his due process rights during his period of administrative confinement at Georgia State Prison. Consequently, a copy of Plaintiff's Complaint and a copy of this Order shall be served upon all Defendants by the United States Marshal without prepayment of cost.

The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## <u>INSTRUCTIONS TO DEFENDANTS</u>

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10)

days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

### INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. <u>See</u> Fed. R. Civ. P. 33. Interrogatories may be served only on a <u>party</u> to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the

pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

**<u>ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING
MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT</u>**

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by

reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 25th day of August, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA