**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

XAVIER DANIELS,

       Plaintiff,

       v.

MANAGER UPTON; WARDEN ROBERT
TOOLE; and STANLEY WILLIAMS,

       Defendants.

CIVIL ACTION NO.: 6:16-cv-94

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Georgia State Prison ("GSP") in Reidsville, Georgia, filed this cause of action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. For the reasons set forth below, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss, (doc. 34), **DISMISS** Plaintiff's Complaint, **DISMISS AS MOOT** all other pending Motions, and **DENY** Plaintiff leave to appeal *in forma pauperis*. I further **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case.

## BACKGROUND[1]

On March 13, 2014, prison officials at GSP assigned Plaintiff to the Tier II administrative segregation unit while the Inmate Affairs Unit and the Georgia Department of Corrections investigated an assault that occurred while Plaintiff was incarcerated at Smith State Prison in Glennville, Georgia. (Doc. 1, p. 2.) Plaintiff states that, although he does not qualify for Tier II

---

[1] The Court takes the following facts from Plaintiff's Complaint, (doc. 1), and Amended Complaint, (doc. 4), and assumes them to be true, as it must at this stage. The Court refers to relevant allegations from Plaintiff's original Complaint because Plaintiff indicated that his Amended Complaint only amended portions of the original filing. (Doc. 4, pp. 1, 4.)

placement under GSP's program criteria, Defendants are continuing to hold him in Tier II as punishment for being assaulted at Smith State Prison. (Id. at p. 3.)

Plaintiff contends that, during his segregation, he has had all his personal property taken away, lost all his privileges, and lost nearly thirty pounds. (Doc. 4, p. 2.) Plaintiff claims that conditions in Tier II are "unacceptably bad." (Doc. 1, p. 6.) Specifically, he complains of, *inter alia*, poor cell sanitation, inmates throwing feces, dusty ventilation, insects, excessive noise, poor showers, "poorly ran recreation," and dirty food trays. (Id.)

On August 25, 2016, the Court conducted the requisite frivolity review and allowed only Plaintiff's due process claims to proceed. (Docs. 12, 15.) On January 18, 2017, Defendants filed a Motion to Dismiss, (doc. 34), to which Plaintiff filed Objections, (doc. 38). On May 1, 2017, Plaintiff filed additional Objections, (doc. 56), Defendants filed a Reply, (doc. 59), and Plaintiff filed a Response, (doc. 62).

## STANDARD OF REVIEW

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Iqbal, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (internal punctuation and citation omitted).  While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.  Id.

## DISCUSSION

The Due Process Clause of the Fourteenth Amendment protects against State deprivations of "life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  "The most familiar office of that Clause is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State."  Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992).  This is known as the procedural due process component of the Clause.  However, the meaning of "liberty" under the Due Process Clause has been expanded to include certain implied, "fundamental rights" that "cannot be limited at all, except by provisions that are narrowly tailored to serve a compelling state interest."  Kerry v. Din, ___ U.S. ___, 135 S. Ct. 2128, 2133 (June 15, 2015) (quotations and citations omitted).  This guarantee is known as the substantive component of the Due Process Clause.[2]

---

[2] Substantive due process is a controversial and frequently assailed doctrine.  See, e.g., McDonald v. City of Chicago, 561 U.S. 742, 811 (2010) (Thomas, J., concurring) ("The notion that a constitutional provision that guarantees only 'process' before a person is deprived of life, liberty, or property could define the substance of those rights strains credulity for even the most casual user of words. . . .  The one theme that links the Court's substantive due process precedents together is their lack of a guiding principle to distinguish 'fundamental' rights that warrant protection from nonfundamental rights that do not."); Nat'l Aeronautics & Space Admin. v. Nelson, 562 U.S. 134, 161 (2011) (Scalia, J., dissenting) (describing substantive due process as an "infinitely plastic concept").

### I.      Procedural Due Process

A Section 1983 action alleging a procedural due process violation requires proof of three elements: "deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally-inadequate process."  Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994).  Plaintiff does not allege that his due process right to property has been threatened by his placement in Tier II segregation.  Accordingly, the appropriate due process analysis requires a look into Plaintiff's liberty interests.

Historically, the liberty interest protected by the Due Process Clause included the right "generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."  Ingraham v. Wright, 430 U.S. 651, 673 (1977) (citations omitted); see also Kerry, ___ U.S. at ___, 135 S. Ct. at 2132–33.  However, the Eleventh Circuit Court of Appeals has identified two situations in which a prisoner—already deprived of liberty in the traditional sense—can be further deprived of liberty such that procedural due process protections are required: (1) when there is a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court[ ]"; and (2) when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Kirby v. Siegelman, 195 F.3d 1285, 1291 (11th Cir. 1999) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).  Under the first scenario, the liberty interest arises from the Due Process Clause itself and "exists apart from the state; in the second, the liberty interest is created by the state."  Id. (citing Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999)); see also Sandin, 515 U.S. at 484 ("[Liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected

manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (internal citations omitted).

### A.      Whether Plaintiff Alleges a Liberty Interest Arising from the Due Process Clause Itself

Our judicial history is replete with cases determining when the conditions of confinement are so severe that it essentially exceeds the sentence imposed by the court.  See, e.g., Washington v. Harper, 494 U.S. 210 (1990) (liberty interest in avoiding involuntary administration of psychotropic drugs to inmate); Vitek v. Jones, 445 U.S. 480 (1980) (liberty interest in avoiding involuntary psychiatric treatment and commitment to mental institution); Kirby, 195 F.3d 1285 (liberty interest in not being branded a sex offender when inmate was never convicted of a sex crime).  These cases all address a liberty interest arising from the Due Process Clause itself and are "expressly protected . . . under the original understanding of the term [liberty]."  Kerry, ___ U.S. at ___, 135 S. Ct. at 2137.  Notably, this interest does not include "a liberty interest in avoiding transfer to more adverse conditions of confinement."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)); see also Sandin, 515 U.S. at 485 ("Discipline by prison officials [including disciplinary segregation] in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.")

Accordingly, Plaintiff's placement in Tier II segregation does not implicate a liberty interest arising from the Due Process Clause itself.  Plaintiff's segregation does not rise to the level of a change so severe that his conditions of confinement essentially exceed the sentence imposed by the Court.

**B.      Whether Plaintiff Alleges a State-Created Liberty Interest**

However, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in Sandin[.]" Wilkinson, 545 U.S. at 222 (internal citation omitted).  Specifically, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves[.]"  Id. at 223.  Thus, Sandin requires the Court to determine whether the conditions of confinement impose an atypical and significant hardship on the inmate "in relation to the ordinary incidents of prison life." 515 U.S. at 484.[3]

Defendants argue that Plaintiff fails to allege sufficient facts to indicate that conditions of confinement in Tier II impose an atypical and significant hardship.  (Doc. 34-1.)  Specifically, Defendants argue that Plaintiff fails to "make any allegation regarding the conditions of ordinary prison life or how the alleged conditions of his own confinement represent a significant hardship in comparison."  (Id. at p. 8.)  In his Objections, Plaintiff largely focuses on how he should not have been placed in Tier II because he "did not do anything wrong" and how Defendants did not properly conduct the investigation into his assault.  (Doc. 38-1.)[4]

---

[3]  In Sandin, the United States Supreme Court found no liberty interest when an inmate was assigned to segregated confinement for thirty days because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence."  515 U.S. at 485.  The Supreme Court noted that the inmate's sentence was unaffected by this assignment, and the conditions of disciplinary segregation mirrored the conditions of administrative segregation and protective custody. Id. at 485–86.

[4]  Plaintiff attempts to provide new facts regarding the differences between Tier II and general population prison conditions in his May 1, 2017, Objections.  (Doc. 56-1.)  However, Plaintiff's May 1, 2017, Objections were filed nearly three months past the Objections filing deadline, and Plaintiff provided no explanation as to why he was so dilatory in submitting his additional Objections.  In fact, the record shows that Plaintiff was clearly capable of timely filing Objections, and he did indeed do so on January 30, 2017, (doc. 38).  Thus, the Court will not consider Plaintiff's untimely filed May 1, 2017, Objections. Furthermore, to the extent Plaintiff seeks to amend his Complaint with his May 1, 2017, Objections, he may not do so.  As the Court specifically instructed Plaintiff, the "filing of Objections is not a proper

While Plaintiff makes various allegations regarding the conditions of his confinement in Tier II, Plaintiff fails to provide any detail as to how his conditions differ from that of the general population.  In fact, Plaintiff's only claim of differing conditions is a conclusory allegation that he "is being denied and deprived of his full privilege's [sic] which he's entitled to just like the general population prisoner's [sic]."  (Doc. 1, p. 7; see also id. at pp. 8–9.)[5]  However, Plaintiff fails to elaborate what these privileges might be and whether they are denied because of his status as a Tier II inmate.  These conclusory allegations are insufficient to support a claim of due process.  See Iqbal, 556 U.S. at 678 ("[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotations and citations omitted).  Thus, Plaintiff fails to set forth facts to support his claim that the conditions in Tier II segregation impose the type of atypical and significant hardship to trigger a state-created liberty interest.  See Walker v. Grable, 414 F. App'x 187 (11th Cir. 2011) (no liberty interest where inmate failed to allege that conditions in segregation were different from conditions in general population); Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9 (11th Cir. 2010) (no liberty interest found for inmate placed in segregation because plaintiff could not show that segregation caused a major

_____

vehicle through which to make new allegations or present additional evidence."  (Doc. 12, p. 18); see also Williams v. McNeil, 557 F.3d 1287 (11th Cir. 2009).

Yet even if the Court, in an abundance of caution, were to consider the claims alleged in Plaintiff's May 1, 2017, Objections, they would be unhelpful to his case.  Plaintiff's Objections still fail to make specific allegations as to how the conditions in Tier II impose an atypical and significant hardship in relation to the ordinary incidents of prison life.  While Plaintiff provides various case citations and their summaries, he fails to include any relevant details describing how conditions in Tier II meaningfully differ from those in general population.  (Doc. 38, pp. 3–5.)  In fact, Plaintiff's allegations appear to be generalized complaints of prison conditions overall rather than any specific claim that the conditions are unique to Tier II.  (Id.)

[5]  Plaintiff makes one specific allegation that the "tier 2 program has limits on the food and other items you can buy."  (Doc. 1, p. 4.)  This allegation alone—particularly without further explanation as to how this restriction has affected Plaintiff—is insufficient to trigger constitutional protection.  See Sandin, 515 U.S. at 485 ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights[.]") (internal quotations and citations omitted); see also Moulds v. Bullard, 345 F. App'x 387, 396 (11th Cir. 2009) (no liberty interest found where prisoner was denied, among other things, one meal per day and failed to allege facts showing that his diet, as a whole, was inadequate).

disruption to his environment as compared to placement in general population); <u>Smith v. Sec'y, Fla. Dep't of Corr.</u>, 358 F. App'x 60 (11th Cir. 2009).

Accordingly, the Court should **GRANT** this portion of Defendants' Motion to Dismiss and **DISMISS** Plaintiff's procedural due process claims.

## II.    Substantive Due Process

As established above, the substantive component of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights[.]" <u>Washington v. Glucksberg</u>, 521 U.S. 702, 718–19 (1997) (internal citations omitted).  If Plaintiff has a fundamental right, then the government may not infringe on that right unless it proves that the limitation is "narrowly tailored to serve a compelling state interest."  <u>Reno v. Flores</u>, 507 U.S. 292, 302 (1993).

The Supreme Court has specified these fundamental rights throughout a long line of cases.  <u>See</u> <u>Glucksberg</u>, 521 U.S. at 720 (collecting cases).  However, any substantive due process analysis "must begin with a careful description of the asserted right," because the "doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field."  <u>Reno</u>, 507 U.S. at 302 (internal quotation and citations omitted).  Furthermore, in determining what a fundamental right is, "the relevant question is not whether the asserted interest is consistent with this Court's substantive-due-process line of cases, but whether it is supported by this Nation's history and practice."  <u>Kerry</u>, ___ U.S. at ___, 135 S. Ct. at 2135 (internal quotations and citations omitted).  Specifically, fundamental liberty rights must be so "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  <u>Glucksberg</u>, 521 U.S. at 720–21 (internal quotations and citations omitted).

Here, Plaintiff claims that he has a fundamental right to be free from administrative segregation from the prison's general poplulation.  This right is not already enumerated within the Supreme Court's "substantive-due-process line of cases."  Accordingly, the Court must determine whether there is a "deeply rooted" history and practice to be free of segregation.  The Supreme Court has repeatedly found that "lawfully incarcerated persons retain only a narrow range of protected liberty interests."  Hewitt v. Helms, 459 U.S. 460, 467 (1983); see also Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").  Furthermore, the Supreme Court's decisions "have consistently refused to recognize more than the most basic liberty interests in prisoners."  Id.  These interests do not include freedom from more adverse conditions of confinement.  Meachum, 427 U.S. at 224–25.  Thus, there is no "objectively, deeply rooted" history and practice in this Nation to be free from segregation or even a segregation with more adverse conditions.

Accordingly, the Court should **GRANT** this portion of Defendants' Motion to Dismiss and **DISMISS** Plaintiff's substantive due process claims.

## III.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[6]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

---

[6]  A certificate of appealability is not required in this Section 1983 action.

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss, (doc. 34), **DISMISS** Plaintiff's Complaint, **DISMISS AS MOOT** all other pending Motions, and **DENY** Plaintiff leave to appeal *in forma pauperis*. I further **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later

challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 25th day of July, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA